IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRITTANY O, as Parent and
Next Friend of L                                                                    PLAINTIFF

V.                               CASE NO. 5:15-CV-5020

BENTONVILLE SCHOOL DISTRICT et al.                                       DEFENDANTS

## MEMORANDUM OPINION

### I. BACKGROUND

Plaintiff Brittany O brings this action as Parent and Next Friend ("Parent") of L ("Student"), her son. Student is a child who is disabled as defined in 20 U.S.C. § 1401(3). His diagnoses include attention deficit hyperactivity disorder, disruptive behavior disorder, mood disorder, oppositional defiant disorder, and sensory disorder. During the 2012–13 school year, Student was enrolled at Thomas Jefferson Elementary School, which is in the Bentonville School District. Parent alleges in her Amended Complaint that after District Defendants identified Student as disabled, they transferred him to a therapeutic day treatment ("TDT") center privately owned and operated by Vista Health, where Student was subjected to physical abuse and provided with an inadequate and unequal education relative to his non-disabled peers in the District. She further alleges that State Defendants enabled or encouraged District Defendants' decision to transfer Student to Vista Health's TDT center, and that Vista Health warehouses disabled students at its TDT centers and profits therefrom by billing Medicaid for their inadequate treatment and education of such students.

1

Parent filed her original Complaint (Doc. 1) in the United States District Court for the Eastern District of Arkansas on March 5, 2014. Then, on July 16, 2014, before any pleadings responsive to the original Complaint were filed, she filed her Amended Complaint (Doc. 10). The Amended Complaint names eleven different defendants, which can be analytically sorted into three separate classes:

- the District Defendants (Bentonville School District ("District"), Michael Poore, Tanya Sharp, Brad Reed, and Amy Simpson ("Individual District Defendants"));
- the State Defendants (Arkansas Department of Education ("ADE"), Tony Wood, and Tom Kimbrell); and
- the Vista Defendants (Vista Health, Allen Morrison, and Veronica Odum).

In her Amended Complaint, Parent asserts claims for relief under 42 U.S.C. § 1983; the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1400 et seq.; the No Child Left Behind Act of 2001 ("NCLBA"), 20 U.S.C. § 6301 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; and Arkansas law.

After the Amended Complaint was filed, the defendants filed various motions to dismiss and a motion to transfer venue. On January 22, 2015, Judge Leon Holmes entered an Opinion and Order (Doc. 85) that, inter alia, dismissed Vista Health without prejudice because Plaintiff failed to timely serve it with the Complaint, dismissed Plaintiff's IDEA claims as time-barred, dismissed all claims against State Defendants except the claim for prospective injunctive relief against Mr. Wood in his official capacity, and granted a transfer of venue to this district. Upon the case being reassigned, this Court scheduled a hearing to further clarify the remaining claims—

which were then summarized, without objection, in the Order that followed (Doc. 94). On March 12, 2015, this Court entered an Order (Doc. 93) dismissing Mr. Morrison without prejudice because Plaintiff failed to timely serve him with the Amended Complaint. On December 22, 2015, this Court entered an Order (Doc. 114) granting Plaintiff a voluntary dismissal of Ms. Odum *with* prejudice. On that same day, this Court entered an Order (Doc. 115) substituting the current Commissioner of the Arkansas Department of Education, Johnny Key, as the sole remaining State Defendant.

Mr. Key's Motion for Summary Judgment (Doc. 116) was filed on December 30, 2015. On the following day, the District Defendants filed a Motion for Summary Judgment (Doc. 119), and Plaintiff filed a Motion for Reconsideration (Doc. 126) and a Motion for Summary Judgment (Doc. 122). All four Motions have been fully briefed and are now ripe for decision.

## II. DISCUSSION

### A. Plaintiff's Motion for Reconsideration

Pursuant to Fed. R. Civ. P. 60(b), Plaintiff asks this Court to reconsider Judge Holmes's January 22, 2015 ruling that her IDEA claims are time-barred. Judge Holmes ruled that under 20 U.S.C. § 1415(i)(2) and Ark. Code Ann. § 6-41-216(g), "a party aggrieved by a decision of a hearing officer in an IDEA case must seek review in court within ninety days from the date that the hearing officer's decision is rendered," (Doc. 85, p. 7), and found that Plaintiff's IDEA claims were untimely since the hearing officer's decision in her IDEA case was dated November 25, 2013, and Plaintiff's original Complaint in this case was filed on March 5, 2014, *see id.* at 8. *See also id.* at 12–13 (ruling that the 90-day limitation for review of IDEA administrative decisions also applies

3

to civil actions seeking attorney's fees and costs from such administrative decisions since the IDEA issues are intertwined) (citing *Williams v. Cnty. of Dakota, Neb.*, 687 F.3d 1064, 1069 (8th Cir. 2012)).

Rule 60(b) states, in relevant part, that "the court may relieve a party . . . from a final judgment, [or] order, . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief." Rule 60(b) relief "is an extraordinary remedy," and should be granted "only when exceptional circumstances prevented a party from seeking redress through the usual channels." *Nucor Corp v. Neb. Pub. Power Dist.*, 999 F.2d 372, 374 (8th Cir. 1993). For example, "[a] court may recognize subsequent changes in either statutory or decisional law," *Agostini v. Felton*, 521 U.S. 203, 215 (1997), or "a significant change . . . in factual conditions," *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992).

Plaintiff presents three arguments in support of her Motion. First, she argues that State Defendants "misrepresented the date that the statute of limitations began to run as November 25, 2013." (Doc. 126, ¶ 4). This argument fails because the record indisputably shows that the IDEA hearing officer's decision did, in fact, issue on November 25, 2013. (Doc. 74-1, p. 31). Plaintiff's second and third arguments are, respectively, that there is no statute of limitations for IDEA attorney fee actions, and that even if there is, the statute of limitations should run from the date the parties received notice of the decision rather than from the date on which the decision was issued. These arguments are merely disagreements with the legal reasoning underpinning

4

Judge Holmes's ruling; they do not present any changes in fact or law, nor any other basis for reconsideration set forth in Rule 60(b). Plaintiff's Motion for Relief Under Rule 60(b) will be **DENIED**.

### B. Plaintiff's and Mr. Key's Cross-Motions for Summary Judgment

Article III of the United States Constitution limits the jurisdiction of federal courts to specific types of "cases" and "controversies." U.S. Const. art. III, § 2. The United States Supreme Court has interpreted this limitation as imposing a requirement that every plaintiff in federal court be able to show three things: (1) that she suffered an "injury in fact" which is both "concrete and particularized" and "actual or imminent"; (2) that there is a causal connection between the injury she suffered and the conduct of which she complains; and (3) that it is "likely," rather than merely "speculative," that a favorable decision by the court would redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The ability to meet all three of these requirements as to a particular claim against a particular defendant is called having "standing" to bring that claim; a court must decline to exercise jurisdiction over a claim if any element of standing is not supported "with the manner and degree of evidence required at the . . . stage[] of litigation" when it is being addressed, *Lujan*, 504 U.S. at 561. Here, we are at the summary-judgment stage of litigation.

Plaintiff and Mr. Key have each moved for summary judgment on Plaintiff's official-capacity claim against Mr. Key for prospective injunctive relief. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, as here, cross-motions for summary judgment are filed, each motion

should be reviewed in its own right, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see also Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). The moving party bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). If the moving party meets this burden, then the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). These specific facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Before obtaining a permanent injunction against a defendant, a plaintiff "must attain success on the merits" of her underlying cause of action against that defendant. *See Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999). Here, that underlying cause of action is Plaintiff's contention that the ADE[1] violated Student's constitutional rights when he was transferred to the Vista Health TDT center. Commensurate with this cause of action, the particular injunctive relief that the Amended Complaint seeks against the ADE is that the ADE be enjoined "from transferring children enrolled in the [Bentonville School District] to Vista Health TDT." (Doc. 10, p. 52, ¶ F).

---

[1] Mr. Key is being sued in his official capacity as the Commissioner of the ADE, which is just a legally formalistic way of saying that Plaintiff is seeking prospective injunctive relief against the ADE, rather than seeking to hold Mr. Key personally liable for the complained-of acts. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

However, there simply is not a shred of evidence in the record that the ADE or any of its agents played any causal role in the District's decision in October 2012 to transfer him to Vista Health's TDT center. Nor is there any evidence that the ADE or any of its agents played any role in the care or education of Student while he was enrolled at the Vista Health TDT facility. At most, the evidence merely establishes that the ADE is a regulatory agency that, in August 2012, suspended its previous practice of certifying and monitoring special education services by day treatment facilities such as Vista Health's TDT center. (Doc. 129-6). Furthermore, the Court does not see how enjoining the ADE from doing something—"transferring children . . . to Vista Health TDT"—that it did not do in the first place would make any difference towards remedying Student's injuries or preventing the occurrence of similar injuries in the future. In short, the ADE has no justiciable connection to the facts of this case.

In anticipation of these problems with causation and redressability, Plaintiff requests in her summary judgment briefings (and for the first time in this lawsuit) a very different and much more expansive form of injunctive relief against the ADE,[2] see Doc. 129, pp. 24–25; Doc. 123, pp. 25–26, and she explicitly ties her standing vis-a-vis the ADE to this newly requested relief, see Doc. 129, pp. 8–10. Specifically, she asks this Court to compel the ADE to resume monitoring and regulating the provision of educational services at therapeutic day treatment facilities. But in this Court's view, the likelihood of preventing similar injuries to Student by simply placing more cops on the beat is purely speculative. Cf. Allen v. Wright, 468 U.S. 737, 759–60 (1984) ("[S]uits

---

[2] The Federal Rules of Civil Procedure permit the entry of judgments granting parties relief that was not demanded in their pleadings, but only to the extent that parties are "entitled" to such relief. Fed. R. Civ. P. 54(c).

challenging . . . the particular programs agencies establish to carry out their legal obligations . . . are rarely if ever appropriate for federal-court adjudication."), *abrogated on other grounds*, *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Since the ADE is not the party that injured Plaintiff, and since Plaintiff cannot show that either of her requested injunctions would redress Plaintiff's injuries, Plaintiff does not have standing to bring her claims against the ADE in this Court. "When it becomes clear a case originally filed in federal court does not belong there because the plaintiffs lack Article III standing, generally the appropriate remedy is to dismiss *without prejudice*." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) (emphasis in original). Therefore, Mr. Key's Motion for Summary Judgment will be **GRANTED**, Plaintiff's Motion for Summary Judgment will be **DENIED**, and Plaintiff's claims against Mr. Key will be **DISMISSED WITHOUT PREJUDICE**.

### C. District Defendants' Motion for Summary Judgment

Four counts in Plaintiff's Amended Complaint remain pending against the District Defendants. Count 1 alleges that the District Defendants violated Student's Fourteenth Amendment rights to equal protection and substantive due process by transferring him to Vista Health's TDT center because of his disabilities, as well as his Fourth Amendment rights by being deliberately indifferent to his risk of physical harm while enrolled at the TDT center. Counts 5 and 6 allege that the District Defendants violated Section 504 of the Rehabilitation Act and Title II of the ADA, respectively, by essentially the same conduct. Finally, Count 7 alleges violations of the Arkansas Constitution, again by essentially the same conduct. The District Defendants have moved for summary judgment on all of these counts.

8

For analytical ease, the Court will make the following factual findings, viewing the record in the light most favorable to Plaintiff, before proceeding to apply the applicable law of each count.  Before Student entered kindergarten, Parent hired a therapist named Allen Morrison, who was a licensed professional counselor and an employee of Vista Health, to treat Student, because Student's behavioral problems had caused him to be expelled from a preschool. (Doc. 155, p. 42). After Student began kindergarten, he was suspended from school for threatening to kill his teacher. *Id.* at 49. After this incident, Mr. Morrison toured the Vista Health TDT facility with Student, and after evaluating the student's needs and discussing the TDT option with Student and Parent, Mr. Morrison recommended to Parent as well as to the District that Student be transferred to the TDT facility. *Id.* at 49, 56–58. Parent and the District all relied on the therapist's recommendation in making their decision to transfer Student to Vista Health's TDT facility, and even Parent does not believe the District did so in bad faith. *See* Doc. 119-1, pp. 39–40, 68–70.

While Student was enrolled at the TDT facility, Parent came to believe Student was being subjected to inappropriate physical restraints and abuse there.  Parent reported this to the Arkansas Department of Human Services, but she did not notify anyone at the District of these concerns until after the school year was over. *See id.* at 2–3, 26–28, 39, 46–47; Doc. 153, p. 14. The District Defendants did not perform any investigation into Parent's allegations of abuse. Doc. 153, p. 14.

Turning to Count 1, the Court begins by observing that the United States Supreme Court has explicitly held on multiple occasions that education is not a fundamental right under the Fourteenth Amendment, *see, e.g.*, *San Antonio Indep. Sch.*

*Dist. v. Rodriguez*, 411 U.S. 1, 34–35 (1973), and that the Equal Protection clause does not prohibit discrimination by state actors on the basis of disability so long as the discriminatory act has a rational basis, *see, e.g., Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001). Here, no violation of the Equal Protection clause occurred because it was rational for the District Defendants to rely on the recommendation and professional judgment of Student's therapist that Student be transferred to the TDT facility. Likewise, no violation of the Fourteenth Amendment's substantive due process protections occurred, as such a violation would require, *inter alia*, that a state actor "violated one or more fundamental rights," *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 816 (8th Cir. 2011), in a manner that was "inspired by malice or sadism," *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012) (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)). To whatever extent Plaintiff's substantive due process claim is predicated on the same alleged "deliberate indifference" that forms the basis for her Fourth Amendment claim, the Court finds that no such deliberate indifference occurred, for the simple reason that the District Defendants were not notified of the alleged physical abuse of Student at the TDT facility until after the school year was already finished; obviously, one cannot be deliberately indifferent to events of which one is unaware. And it is not enough that the District Defendants were aware as a general matter that the TDT facility sometimes employed the use of physical restraints against patient-students who were being disruptive, because there is no evidence in the record that the District Defendants had any reason to believe, prior to notification by Parent, that such restraints were being used in an unreasonable manner. *Cf. C.N.*, 591 F.3d at

633–34. Because no reasonable fact-finder could conclude that the District Defendants violated any of Plaintiff's federal constitutional rights, the District Defendants are entitled to summary judgment on Count 1 of the Amended Complaint, which will be **DISMISSED WITH PREJUDICE**.

Turning to Counts 5 and 6, Title II of the ADA and Section 504 of the Rehabilitation Act prohibit the exclusion of qualified individuals with disabilities from participation in, or receiving benefits of, public services or programs receiving federal funding. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The enforcement, remedies, and rights under these two statutes are identical. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). "Where alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment." *Id.* "In order to establish bad faith or gross misjudgment, a plaintiff must show that the defendant's conduct departed substantially from accepted professional judgment, practice or standards so as to demonstrate that the persons responsible actually did not base the decision on such a judgment." *B.M. ex rel. Miller v. South Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (internal alterations and quotation marks omitted). It is not enough for the defendants to have failed to comply with the applicable federal statues; rather, the non-compliance "must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent." *Id.*

Here, regardless of whether the District complied with the Rehabilitation Act and the ADA, the record leaves no room for dispute as to whether the District based its

decision to transfer Student to the Vista Health TDT on professional judgment. Again, without rehashing the findings *supra*, the District—as well as Parent—reasonably relied on the professional judgment and recommendation of Student's therapist. Since Plaintiff cannot show bad faith or gross misjudgment on the part of the District, the District is entitled to summary judgment on Counts 5 and 6, which will be **DISMISSED WITH PREJUDICE**.

This leaves only Plaintiff's state-law claims against the Individual District Defendants in Count 7. Since the Court has now dismissed all claims over which it has original federal-question jurisdiction, it will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, Count 7 will be **DISMISSED WITHOUT PREJUDICE**.

### III. CONCLUSION

All claims in this case have now been resolved, and the Amended Complaint will be **DISMISSED WITHOUT PREJUDICE** as to Defendant Johnny Key, **DISMISSED WITH PREJUDICE** as to the federal claims against Defendants Bentonville School District, Michael Poore, Tanya Sharp, Brad Reed, and Amy Simpson, and **DISMISSED WITHOUT PREJUDICE** as to the state-law claims against Defendants Poore, Sharp, Reed, and Simpson. A separate Order and Judgment will be entered contemporaneously with this Memorandum Opinion.

**IT IS SO ORDERED** on this 15th day of March, 2016.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE