IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRITTANY O, as Parent and
Next Friend of L                                                      **PLAINTIFF**

**V.**                              **CASE NO. 5:15-CV-5020**

BENTONVILLE SCHOOL DISTRICT, *et al.*                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Now before the Court is Plaintiff's Motion For Attorney's Fees and Costs (Doc. 185). Defendant Bentonville School District ("District") has filed a Response (Doc. 187), and Plaintiff has filed a Reply (Doc. 191). The Motion being ripe, and for the reasons stated below, the Court finds that Plaintiff's Motion should be **GRANTED,** but not in the full amount requested. Plaintiff is awarded a reasonable attorney fee in the sum of $37,372.50, and costs in the sum of $5,465.05

### I. BACKGROUND

Plaintiff Brittany O ("Parent") brought this action on behalf of L ("Student"), her son. Student is a child with a disability as defined in 20 U.S.C. § 1401(3). During the 2012-13 school year, Student was enrolled as a kindergartner in the District. At the time of his enrollment, Student had been diagnosed with attention deficit hyperactivity disorder ("ADHD"). Student's first six weeks in the regular classroom were marked by numerous outbursts and behavior unfit for a traditional learning environment. On September 28, 2012, the District went through the formality of an accommodation conference—the pre-ordained outcome of which was a Section 504 plan (the "504 Plan"), which consisted of

progressive interventions to address Student's behavior. But the 504 Plan was never implemented in the actual classroom. Instead, the District, Parent, and Student's therapist all agreed that Student should immediately transfer out of his traditional kindergarten classroom to Vista Health's Therapeutic Day Treatment program ("TDT")—which the District had contracted with to provide Student's education.

There was no discussion at the time of transfer regarding the need—much less a formal evaluation—for special education services under the IDEA.[1] Consequently, the District did not provide Student with any special education related services. The Hearing Officer also found that the District did a poor job of monitoring Student's progress while at the TDT, and therefore failed to make on-going assessments as to whether Student's educational needs were being met.[2]

Testing performed in March, 2013 by an occupational therapist revealed that Student suffered from multiple sensory processing disorders. A May 2013 neuropsychological evaluation ruled out cognitive dysfunction and autistic disorder, but identified additional diagnoses including oppositional defiant disorder and mood disorder. Despite this new information, and despite acknowledging that mere therapeutic interventions had failed to improve Student's behavior, the TDT's recommendation for the 2013-14 school year involved "a higher level of care"—in the form of Vista Health's residential treatment program. Doc. 187-2, p.11-15.

---

[1] This was perhaps because, according to the Hearing Officer's Findings of Fact, ADHD was the only diagnosis identified as precipitating referral to the TDT.

[2] "There was no record of any meetings that took place between TDT and District personnel regarding the Student's status or educational progress." (Doc. 187-2, p. 9).

2

On June 14, 2013, Parent presented the District with an IDEA special education referral form, supported by occupational therapy and neuropsychological evaluations. The District conducted a referral conference with Parent two weeks later. Despite Parent's request that Student be placed in a regular classroom for his first grade year, the District made the decision "to wait until the Student completed his treatment with TDT before attempting a transition back into school." *Id.* at 18-19. No decision was made with regard to conducting additional evaluations to determine the need for special education or related services." *Id.* at 16. Parent found this outcome unacceptable.

On August 19, 2013—the first day of the school year—Parent provided new documentation to the District showing that Student had been formally diagnosed with a Serious Emotional Disturbance ("SED"). That same day, after conferring with its psychological examiner, the District prepared and signed a "referral form" and scheduled a special education referral conference, which was conducted two days later. *Id.* at 20. The District's position was that Student should begin first grade with the same 504 Plan as was in place during his kindergarten year. The District said it needed more information, and that further evaluations were necessary, to determine the appropriateness of adding special education services. In the meantime, however, the District proposed to implement a temporary Individualized Education Plan ("IEP"), whereby Student would receive special education services in several subject areas, in the general education setting, until such time as the District could conduct a functional behavioral assessment. *Id.* at 20-21. Parent objected to the District's plan, seeking instead to enforce her right to a due process

hearing.[3] The District's options were limited at that point, but it nevertheless agreed to make those same special education services available to Student pending a hearing.

The due process complaint, filed on August 19, 2013, named the District, the Arkansas Department of Education ("ADE"), and the TDT as respondents. The complaint sought seven items of relief, namely:

- a declaration of Student's eligibility for special education services;

- compensatory special education and related services;

- evaluation for placement in programming services;

- development of an appropriate IEP;

- reimbursement of Student's transportation costs;

- assignment of a Parent-approved consultant for programming and behavioral issues; and

- a declaration of Section 504 exhaustion.

(Doc. 185-4, p. 7). The Hearing Officer would later view Parent's filing of the complaint as a "stumbling block" to a settlement that should have been reached during the first week of school—all because the District's offer contemplated the use of its own personnel to perform the evaluation, whereas Parent demanded the right to select the examiner herself. (Doc. 187-2, p. 21).

This seemingly minor impasse eventually led to five days worth of testimony and exhibits, spread out over the course of two months. Afterwards, the Hearing Officer determined that the District had violated the IDEA's goals and purposes, and thus the

---

[3] Parent had apparently filed her due process complaint and hearing request with the Arkansas Department of Education on August 19th, the same day that she met at the school to discuss the new SED diagnosis.

denial of Student's right to a free and public education ("FAPE"). But he also found that the District had not done so intentionally, and that it had offered a significant proposal to correct its failures. In fact, the effect of the relief ultimately awarded by Hearing Officer was to require the District to immediately implement the proposal it had offered to Parent in August. Beyond that, the Order required that the District's designated examiner be someone that Parent found acceptable, too. And the District was also ordered to provide certain compensatory educational opportunities during the pendency of the evaluation process. (Doc. 185-5, pp. 30-31).

The Hearing Officer's Order was dated November 25, 2013. The District did not appeal the Hearing Officer's findings that it had violated the IDEA and/or that it had failed to provide Student with FAPE. On March 5, 2014, Parent brought suit in the Eastern District of Arkansas, alleging a plethora of federal and state causes of action against the District, the TDT, the ADE, and seven other persons who were sued in their official and individual capacities. One of those claims sought recovery from the District for Parent's attorney fees and costs incurred during the due process proceedings. All of Parent's federal claims were eventually dismissed—some pursuant to Rule 12, and others pursuant to Rule 56. But with specific regard to the attorney fee claim, it was dismissed by the district court because suit on that claim was not commenced within the IDEA's 90 day window to appeal (or seek fees related to) state administrative rulings in federal court.

Parent then appealed the district court's rulings. The Eighth Circuit found Parent's attorney fee claim to have been timely filed, and it therefore reversed and remanded that claim for further consideration by this Court. The district court's other dismissals were all affirmed. Below, the Court will first discuss the legal standards generally applicable to an

5

award of attorney fees pursuant to the IDEA, and then it will explain how those standards should be applied to Parent's contentions here.

## II. LEGAL STANDARD

As the Eighth Circuit observed on appeal in this case, a prevailing parent in a state administrative IDEA proceeding *may* be awarded reasonable attorney fees. *See* Doc. 170-1, p. 2 (citing 20 U.S.C. § 1415(i)(3)(B)(i)(I)). On remand, this Court has been tasked with determining whether attorney fees and costs *should* be awarded. In excercising its discretion, the Court must determine two things. First, was Parent the prevailing party in the administrative proceeding below? "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12,(1992). And second, if Parent achieved prevailing-party status, is the amount of attorney fees sought reasonable? "The amount of the fee, of course, must be determined on the facts of each case." *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983).

In calculating a reasonable fee, a number of factors should be considered:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 430 n.3.

"The most useful starting point [is to determine] the number of hours reasonably expended multiplied by a reasonable hourly rate." *Id.* at 433. "The party seeking an award

6

of fees must submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* Hours that were not "reasonably expended" should also be excluded. *Id.* at 434. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Id.* In determining what constitutes a "reasonable hourly rate," the court must consider the "ordinary fee for similar work in the community." *Gopher Oil Co., Inc. v. Union Oil Co. of Cal.*, 757 F.Supp. 998, 1008 (D. Minn. 1991), *remanded in part*, 955 F.2d 519 (8th Cir. 1992).

"The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (citing *Hensley,* 461 U.S. at 436, and *Farrar*, 506 U.S. at 114). Sometimes a plaintiff may obtain mixed results, prevailing on some, but not all, of her claims. Where the issues on which the plaintiff lost are unrelated to those on which she won, the unrelated issues must be treated as if they were separate cases, and no fees can be awarded. If, however, the claims on which the plaintiff lost are related to those on which she won, the court may award a reasonable fee. *Hensley*, 461 U.S. at 435-36. If the plaintiff has won excellent results, she is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which she did not win. If the plaintiff's success is limited, she is entitled only to an amount of fees that is reasonable in relation to the results obtained. *Id.* "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

## III. DISCUSSION

### A. Who Prevailed at Which Level and What Did They Win?

#### 1. Parent Prevailed at the Administrative Level

The administrative due process complaint named the District, the TDT, and the Arkansas Department of Education ("ADE") as Respondents, against whom Parent alleged all manner of wrongdoing, and from whom she sought multiple forms of relief. After the Hearing Officer summarily dismissed all of the claims against the TDT and ADE and all of the non-IDEA claims against the District, the matter proceeded to an administrative hearing, which occurred over five separate days in September and October of 2013. In his November 25, 2013 ruling, the Hearing Officer summarized and made findings with respect to two issues:

1.  Did the District fail to evaluate and provide special education services for Student in an appropriate placement during the school year 2012-13?

2.  Did the District fail to evaluate and provide special education services for Student in an appropriate placement during school year 2013-14, and in the process did the District violate the stay-put provisions of the IDEA?

In the course of his ruling, the Hearing Officer addressed the competing merits presented by each side. As to the 2012-13 kindergarten year, on the one hand, the Hearing Officer explained the District's facially apparent reasonableness in placing Student at the TDT. After all, the disruptive behavior was severe, threatening, and repetitive to the point of adversely affecting the learning environment for other students in the classroom. Not to mention the fact that both Parent and her son's therapist were in agreement with this

8

plan. But on the other hand, the Hearing Officer explained why the hastily prepared 504 Plan was not a substitute for the assessment of Student's "unique needs for special education intervention in the regular classroom prior to removal to a more restricted setting." (Doc. 187-2, p. 24). The Hearing Officer further expressed considerable concern about the District's subsequent lack of involvement and assessment of Student's educational progress and evolving needs.

As to the 2013-14 first grade year, the Hearing Officer made detailed findings of additional information and diagnoses that began to surface in the Spring of 2013. The District was found to be (inexcusably) ignorant of Student's sensory and neurological disorders, because it had failed to properly supervise Student's educational process. Consequently, the District failed to identify the need to evaluate how these disorders impacted Student's need for special education services. To make matters worse, the TDT—to whom the District had effectively outsourced its educational responsibilities—had likewise failed to recognize the need for further evaluations. In June 2013, the parties met in a request-for-referral conference wherein Parent provided extensive information to support her position that Student be evaluated for a return to the traditional school environment. But the District was not persuaded to take further action, instead siding with the TDT's recommendation that Student remain under the same 504 Plan.

Ultimately, the Hearing Officer resolved the substance of both fact questions in Parent's favor and ordered the District to implement the same plan that it had proposed to Parent on August 21, 2013—*i.e.,* two days after receiving Parent's demand for a due process hearing. In ordering this relief, however, the Hearing Officer chided Parent and her counsel for unreasonably protracting the administrative proceedings. The Hearing

Officer also opined that Parent had "thwarted [the District's] efforts by not agreeing with the District's suggested IEP or their choice of an evaluator." *Id.* at 30.

In light of the above facts, the Court finds Parent to be the prevailing party at the administrative level for the following reasons: (1) the Hearing Officer determined that the District violated the IDEA and failed to provide Student with FAPE, and (2) the administrative Order legally mandated the District to take specific action on Student's behalf. While it is true that the extent of Parent's success is relatively modest when measured against the District's initial proposal, the Court is persuaded—largely because the District failed to offer a formal evaluation after its meeting with Parent in June of 2013—that the District would not have taken further action in the absence of Parent's filing of a formal complaint. The Court will therefore view the unnecessarily protracted nature of the proceedings and Parent's marginal amount of success as two of several factors it must consider when determining the reasonableness of the fee award.

### 2. Mixed Results at the District Court Level

On March 5, 2014, more than 90 days after the issuance of the Hearing Officer's Final Order, Parent filed suit in the United States Court for the Eastern District of Arkansas, where the ADE is headquartered. The federal lawsuit, as subsequently amended (Doc. 10), pleaded seven causes of action, including:

  (1)   a claim for attorney fees and costs pursuant to the IDEA for having prevailed at the administrative level;

  (2)   multiple claims against all defendants for deprivation of Student's constitutional rights;

  (3)   a claim against the ADE for failing to comply with its supervisory and enforcement obligations under the IDEA;

(4)     a claim against the District and the ADE for violations of The No Child Left
        Behind Act;

(5)     claims against the ADE, the District, and the TDT for disability discrimination
        in violation of Section 504 of the Rehabilitation Act;

(6)     claims against the ADE and the District for disability discrimination in
        violation of Title II of the ADA; and

(7)     several state law claims, including allegations against seven of the individual
        defendants for violating Student's rights under the Arkansas Constitution,
        and separate tort claims against the TDT and two of its employees in their
        individual capacities.

All seven of Parent's claims were dismissed at the district court level. In specific

regard to the attorney fee claim, it was dismissed as being untimely filed. On further

appeal, however, the Eighth Circuit found that Parent's claim for attorney fees and costs

was not time barred. On remand, this Court has now deemed Parent the prevailing party

at the administrative level. Thus, Parent has ultimately prevailed at the district court level,

too—but only to the extent that she vindicated her right to petition for an award of attorney

fees and costs. As to each and every other claim litigated in district court, Parent did not

prevail. Moreover, based on its review and intimate knowledge of all of the pleadings in

this case, the Court finds that the prosecution and defense of the six dismissed claims

accounts for almost the entirety of the time and resources expended in the district court

portion of the litigation, overall.

Accordingly, Parent is entitled to an award of fees and costs reasonably incurred at

the district court level to enforce her entitlement to fees and costs incurred at the

administrative level—during the due process hearing. To be clear, Parent has stated that

she does not seek fees or costs attributable to her failed pursuit of the six other causes of

action that she raised, but ultimately lost, in district court.

### 3. Mixed Results at the Circuit Court Level

In the course of ruling on early-stage dispositive motions, the Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, dismissed both the substantive and attorney fee components of Parent's IDEA claims as untimely. After dismissing some of Parent's other claims as legally improper, Judge Holmes transferred venue of the remaining claims to the undersigned in the Western District of Arkansas—where the school district is located. Thereafter, this Court dismissed the remainder of Parent's claims and causes of action on Summary Judgment. *See* Docs. 164,165. Parent then appealed the dismissal of all dismissed claims. The Eighth Circuit found that the IDEA claim for attorney fees was not time-barred, and consequently reversed the dismissal of that claim. The Court affirmed the dismissals of Parent's remaining claims on appeal. Parent is therefore entitled to fees and costs reasonably incurred at the Circuit level—but only with respect to the single issue on which she prevailed.

### B. What is a Reasonable Fee?

### 1. State Administrative Proceedings

For the reasons explained above, Parent prevailed at the administrative level and is entitled to an award of fees. Parent's counsel has submitted an affidavit and itemized billing statement in support of her Motion seeking $59,130.00 in attorney fees.[4] (Doc. 185-2). "Parent believes a full fee should be awarded based on the excellent results obtained."

---

[4] In her Motion, counsel mistakenly claims the amount is $59,280.00. (Doc. 185, p. 5). But in doing so, counsel fails to reconcile the fact that she did not charge (per the IDEA) for her 0.6 hour attendance at the resolution conference on August 30, 2013. *See* Doc 185-2.

*Id.* The District argues that the Court should "substantially limit [the fee award] to reflect [Parent's] own culpability as determined by the hearing officer and in consideration of the many unsuccessful claims [that she] pursued." (Doc. 187, p. 13).

Having considered Parent's Motion and supporting documents, the Court finds her request for nearly $60,000.00 in fees to be excessive and unreasonable—primarily because of the excessive hours and unnecessarily protracted manner in which Parent's counsel elected to litigate the due process claims, and because of Parent's relatively marginal success. Parent's fee request must therefore be reduced. *See* 20 U.S.C. §1415(i)(3)(F); *Hensley*, 461 U.S. at 440. In arriving at this conclusion, the Court has identified and weighed the relevant factors and offers the following points of explanation.[5]

### a. Time and Labor Reasonably Required

"The most useful starting point [is to determine] the number of hours reasonably expended multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Plaintiff seeks an award based on 237.12 hours of attorney time at the rate of $250.00 per hour, for a total of $59,280.00. In its close review of the billing itemization and excerpts of the administrative record included with the briefing, the Court is skeptical that counsel actually spent what amounts to six 40-hour work weeks on this single case during the three-month period of time that it was litigated. Regardless, for the reasons explained below, 237 hours is unreasonable here. As to the hourly rate, the Court would first observe that it has *customarily* approved hourly rates in the range of $200.00 to $300.00 for comparable civil rights litigation over which it presides, based on varying degrees of counsel's experience,

---

[5] In some instances, relevant factors are italicized within the text of this section of the Opinion.

responsibility, and proficiency. The Court finds counsel's requested rate of $250.00 per hour to be generally reasonable, although it does so with reservations.[6]

"In calculating a reasonable fee amount, courts should exclude hours that were not 'reasonably expended,' such as excessive or redundant hours . . ." *Id.* at 434. "A party in a civil rights action is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab." *Planned Parenthood of Minn. v. Citizens for Cmty. Action*, 558 F.2d 861, 871 (8th Cir. 1977).

Aside from the issue of whether counsel's stated hours are accurate for lodestar purposes, the Court finds that it was not reasonably necessary to spend 237 hours litigating the disputed issues in this case. In fact, given how quickly the District offered a resolution proposal, there is good reason to question whether Parent is entitled to any fee award. While it is true that the District had rejected a special needs evaluation in June

---

[6]   While acknowledging that counsel certainly possesses the necessary *skill* and *experience* to practice in this niche area of law (one that many lawyers find *undesirable)*, the Court has been frequently frustrated by her *reputation* for failing to *perform these legal services properly. See Albright v Mountain Home School Dist.*, No. 3:16-CV-3011, Doc. 105, pp. 12-14. On the one hand, counsel's appearances before this Court reveal that she is a passionate advocate in an under-served field of law. But on the other hand, her motion practice before this Court reflects that she has taken on more cases than she can effectively manage.   So the Court disagrees with counsel's self-assessment that her experience produces "efficiencies" which entitle her to a premium higher hourly rate. (Doc. 185-1, ¶ 15).   To the contrary, as illustrated in this very case, counsel frequently lacks the discipline to focus her claims and remedies on the issues truly in dispute, instead preferring a shotgun approach in which she asserts multiple, cumulative causes of action in the hope that something will stick.   The side-effect of this approach (intentional or not) is to unnecessarily run up attorney fees and costs on both sides.   All of that is to say, despite her specialized knowledge and experience, counsel's reputation and performance are not comparable to the quality of services provided and performed by attorneys who have been awarded an hourly rate at the upper end of the range that the Court customarily approves. Counsel is deserving of no more than a middle-of-the-range hourly rate for similar services. And the Court specifically rejects the suggestion that counsel's "new" billing rate of $350.00 per hour is reasonable for any of her work in this case.

14

2013, the District changed its position on August 19, 2013, when Parent met with the 504 Coordinator to discuss Student's SED diagnosis. (Doc. 185-5, p.19). Upon reviewing the new information, the District's psychological examiner "determined that a special education referral was in order." *Id.* By the end of the day on August 19th, a notice of referral conference form had been signed by the school's principal, and a meeting with Parent was scheduled for the very next day. *Id.* At the referral conference (which was actually conducted on August 21st), the District sought to maintain the *status quo* of Student's placement—but only while it acquired additional supporting information and conducted a multi-faceted comprehensive evaluation. The District explained that these materials were necessary to prepare a final IEP, including the scope of any special education services to be provided. In the interim though, the District proposed a temporary IEP, including special education services in numerous subject areas, which Student would receive until such time as a functional behavior assessment could be completed. *Id.* at pp. 20-21. Inexplicably, Parent refused to sign the consent forms necessary for the District to obtain Student's TDT records, and she further "objected to the District's plan, announcing that she had [already] filed for a due process hearing."[7] *Id.* A week later, on August 30, 2013, the parties conducted a "resolution conference," but it was quickly adjourned.[8] To its credit, the

---

[7] Parent's request for a due process hearing was filed on August 19th, the same day Parent provided the District with documentation of Student's SED diagnosis. (Doc. 185-5, p. 21). It is not clear whether the District based its finding of a need for the referral solely on the SED documentation, or whether, perhaps, it was also reacting to the filing of Parent's due process complaint.

[8] Parent's counsel billed about three hours of time to prepare for the settlement conference, but her negotiations lasted no more than half an hour. (Doc. 185-2). Subsequent to this, Parent's counsel billed another 194.50 hours—at the end of which Parent was awarded essentially the same relief as offered by the District on August 21st.

District continued to provide special education services while awaiting completion of the hearing process.

Parent's due process complaint raised unnecessary claims against unnecessary parties, all of which were summarily dismissed.[9] Parent later added a claim asserting that the District had violated Student's "stay put" rights under the IDEA, which turned out to be much ado about nothing.[10] *Id.* at p. 22. The Hearing Officer was clearly frustrated by the overly broad scope of Parent's contentions, and he seemed to believe that a lengthy hearing was not necessary to resolve such a seemingly minor disagreement—which had centered on Parent's insistence that she be allowed to decide who would perform the functional behavioral assessment.[11]

The hearing itself was unnecessarily protracted—consuming five days spread over two months—largely because of Parent's unnecessary and cumulative development of facts.[12] For context, ADE due process hearings generally "should last no longer than three

---

[9] Parent's counsel spent 3.25 hours on August 16, 2013 "researching" who the proper parties should be. On September 5th, counsel spent another 3.5 hours "researching" ADE and TDT issues. (Doc. 185-2).

[10] On September 12, 2013, Parent's counsel billed 2.0 hours for drafting a letter regarding "stay put" violations. On September 22nd and 23rd she spent a total of 4.8 more hours researching and preparing pleadings regarding stay-put issues. (Doc. 185-2). Yet, the Hearing Officer said "[t]here was no evidence or testimony presented that would indicate that the District violated the Student's stay put provision on entering his first grade." (Doc. 185-5, pp. 21-22).

[11] In fairness, the Hearing Officer also scolded the District for not agreeing to a referral evaluation in June 2013, which might have avoided the filing of the complaint altogether. (Doc. 185-5, p. 21).

[12] For example, counsel took time to develop testimony to support the tort claims she would later bring against the TDT in district court, despite the fact that the TDT was dismissed as a party from the administrative complaint. Counsel also spent time calling

16

(3) days." Ark. Dept. Ed., *IDEA Due Process Hearing Procedures*, §10.01.32. The time line and other core facts were established by undisputed educational and medical records. Yet Parent called seventeen witnesses, many of whom the District argues were either impertinent or unnecessarily cumulative. By contrast, the District called one witness. Having studied the exhibits provided and the contentions made by both parties, the Court sides with the District here, and sees no reason why Parent could not have made a complete record in 2 or 3 days time.[13] Multiple extra hearing days scattered over the course of two months also resulted in redundant preparation time,[14] and extra time and expense for counsel to travel between Little Rock and Bentonville.[15] "A party is not entitled needlessly to accumulate exorbitant legal fees with the expectation that the losing party will be called upon to pick up the entire tab." *Planned Parenthood*, 558 F.2d at 871.

---

the District's superintendent as a witness, when clearly the same testimony could have been elicited through any number of other witnesses.

[13] According to counsel's billing record, the hearings for Days 1, 2, and 3 lasted a collective 24.9 hours. The Court knows from its own experience that an entire jury trial (of much greater factual complexity than the issues present here) can be tried in fewer hours. Counsel billed an additional 9.2 hours for Day 4, and she logged 9.25 more hours for Day 5. (Doc. 185-2).

[14] For example, prior to *each* successive hearing day, counsel would read the transcript from the previous session, review exhibits again, and meet with her client one more time. She billed 6.2 hours to read the Day 1 and 2 transcripts before Day 3, and she billed 4.3 hours to read the Day 3 and 4 transcripts before Day 5. Counsel billed for reviewing these same transcripts yet again in preparation for writing the post-hearing brief. As another example, on October 23, 2013, counsel made two identical entries for "review exhibits and prepare for DPH Day #5," at 4 hours of time each, for a total $2,000.00 worth of preparation for the final day of the hearing. (Doc. 185-2).

[15] Counsel bills a full hourly rate for travel, and in this case she has (generously) logged eight hours per round trip. In other words, counsel billed $2,000.00 for each separate travel day.

### b. The Amount Involved and the Results Obtained

"The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (citing *Hensley,* 461 U.S. at 436). "If the plaintiff's success is limited, [s]he is entitled only to an amount of fees that is reasonable in relation to the results obtained. *Id.* (citing *Hensley*, 461 U.S. at 440). The award of fees to a prevailing party is intended to "encourage prompt resolution of meritorious claims and to discourage unnecessary litigation. This policy rationale . . . is served by declining to award fees when litigation yields only relief that in all probability was attainable without the time and expense of adversarial proceedings." *Peter v. Jax*, 187 F.3d 829, 837-38 (8th Cir. 1999) (citing *State of N.H. v. Adams*, 159 F.3d 680, 687 (1st Cir. 1998)).

Parent did not prevail on several dismissed claims. And while her IDEA claims were central to the due process hearing, there is simply not much daylight between what the District had proposed on August 21st and what the Hearing Officer ordered on November 25th. Plaintiff's limited "success" can only be measured by: (1) the subjective value of having veto power over the District's choice of evaluator, and (2) the cost of not less than eight hours of compensatory education per week, during the two-month period that was necessary to conduct Student's evaluation. (Doc. 185-5, at p. 30-31). These measures are certainly important and meaningful, but the remedy awarded (beyond what the District had already agreed to provide) is relatively minor and considerably disproportionate to the time and expense incurred by all parties. The Court agrees with the Hearing Officer's finding that Parent "thwarted" the District's remediation efforts "by not agreeing with the

18

District's suggested temporary IEP or their choice of an evaluator." (Doc. 185-5, p. 30).

In other words, Parent's dogged pursuit of litigation "yielded only relief that in all probability

was attainable without the time and expense of adversarial proceedings." *Peter*, 187 F.3d

at 837-38.

### c. Reduced Award

Now having considered the relevant factors, the Court must determine an

appropriate method of reduction. "There is no precise rule or formula for making these

[fee] determinations. The district court may attempt to identify specific hours that should

be eliminated, or it may simply reduce the award to account for the limited success. The

court necessarily has discretion in making this equitable judgment. This discretion,

however, must be exercised in light of the considerations we have identified." *Hensley*,

461 U.S. at 436–37; *see also* 20 U.S.C. § 1415(i)(3)(F).

Parent seeks $59,130.00 in fees, based on 236.52 hours of time,[16] at a rate of

$250.00 per hour for having prevailed at the administrative level. For the reasons

explained above, the Court finds that counsel's itemized fee request should be equitably

reduced by two-thirds, (1) because the billing hours are excessive and were incurred as

a result of unreasonably protracted litigation; and (2) to reflect Parent's limited success.

*Neosho R-V Sch. Dist. v. Clark*, 315 F.3d 1022, 1030 (8th Cir. 2003) (finding that a 60%

fee reduction "properly reflected that much of the prehearing work was spent on issues that

were not ultimately tried or prevailed upon in the administrative hearing"); *Warner by

Warner v. Indep. Sch. Dist. No. 625*, 134 F.3d 1333, 1337–38 (8th Cir. 1998) (affirming

---

[16] *See* explanation for these corrected amounts at footnote 4, *supra*.

substantial reduction where, prior to the administrative hearing, the school district "made a settlement offer that included virtually all the relief later ordered by the Hearing Review Officer"). The Court therefore finds that Parent should be awarded reasonable attorney fees for having prevailed at the administrative level in the sum of $19,710.00.

## 2. District Court Proceedings

As explained above, Parent was not the prevailing party on any substantive cause of action at the district court level. However, she did ultimately establish that her request for attorney fees at the administrative level was timely filed in the district court. "Where the issues on which [Parent] lost are unrelated to those on which [s]he won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded." *Hensley*, 461 U.S. at 434-35.

Parent's Motion lumps together counsel's time at the district court level with her time at the Circuit level. In total, she seeks an award of $41,342.50 in billable hours. This consists of 42.1 hours of attorney time billed prior to 2016 at the rate of $250.00 per hour, and 88.05 hours at her "new" rate of $350.00 per hour.[17] According to plaintiff's counsel, the itemized hours are limited to the amount of time she specifically worked on IDEA attorney fee issues. However, having compared the court filings with her itemized billing, the Court is skeptical of counsel's representation. In the following subsection, the Court examines each billing entry and makes allowances for attorney time reasonably related to and necessarily incurred in pursuit of Parent's IDEA fee claim at the district court level—divided into pre-remand and post-remand activities. Circuit level time is addressed

---

[17] Counsel explains that she increased her rate effective January 2016. (Doc. 185).

in a subsection to follow. For the reasons stated earlier, the Court finds $250.00 per hour

to be a reasonable hourly rate for all district and Circuit level work in this case.[18]

### a. Pre-Remand Proceedings

Looking at counsel's billing during the pre-remand proceedings in district court, the

Court makes the following observations and allowances:

- On January 10, 2014, counsel attributes 3.2 hours to drafting a settlement letter regarding the fee issue. Compensating counsel for this amount of time seems generous, but the Court will allow it.

- On March 5, 2014, 7.3 hours are recorded for "researching and preparing" the complaint (Doc. 1), which is a rather lengthy document—31 pages in all. However, the claim for attorney fees consists entirely of two cumulative sentences. *See* Doc. 1, ¶ 3, and ¶ F of the prayer for relief. Realizing that other factual adornment of the pleading would have been required if the complaint were dedicated solely to the attorney fee issue, the Court will allow a total of 2.5 hours for preparing the complaint.

- An amended complaint was filed on July 16, 2014. (Doc. 10). This pleading is even longer than the original—54 pages. But, importantly, when comparing the amended complaint to the original complaint, the two sentences that plead the IDEA fee claim are unchanged. For this reason, the Court will not compensate counsel for any time drafting the amended complaint.

- The District filed a Motion for Partial Dismissal and Brief in Support (Docs. 25 and 26) on August 5, 2014, consisting of 10 total pages. The basis for dismissal of the fee claim (untimeliness) occupies three of those pages. The remaining portions seek dismissal of Parent's § 1983 official capacity claims and No Child Left Behind Act claims. Parent filed a 10-page Response (Doc. 47), about half of which was dedicated to the fee issue. Counsel's billing attributes a total of 12.95 hours to reviewing, researching, and responding to the District's motion—which seems like a lot of time. But the time-to-file legal issue is a *novel* one, and undecided in this Circuit, and given the *amount at stake* the Court will allow the full amount requested.

- In an omnibus opinion and order filed on January 22, 2015, Judge Holmes granted the District's motion and dismissed Parent's attorney fee claim as

---

[18] *See also* footnote 6, which explains why the Court finds counsel's current rate of $350.00 per hour unreasonable.

21

untimely (Doc. 85). Venue of the remaining claims was transferred to this district. *Eleven months later*, Parent filed a Rule 60(b) Motion for Reconsideration and Brief in Support (Docs. 126 and 127). Counsel attributes a total of 9.85 hours of her time spent reading, researching, and writing the rule 60 Motion and Brief. This Court summarily rejected and denied Parent's Motion for the reasons stated in its Order (Doc. 164). Parent's Motion was grossly untimely.[19] The Motion was not in keeping with the purposes or genuine reasons for relief under Rule 60(b), because it did not present the Court with any new facts, arguments, or recent precedent. So the Court finds it unreasonable to compensate counsel for this claimed time and will not award any fees related to it.

- Any other billed tasks not mentioned above are deemed unrelated or unnecessary to the attorney fee issue.[20]

The allowances for pre-remand tasks total 18.65 hours. At $250.00 per hour, Parent is entitled to attorney fees totaling $4,662.50 for work during this phase of the proceedings.

### b. Post-Remand Proceedings

The sole issue on remand from the Eighth Circuit was whether Parent was entitled to an award of fees and costs under the IDEA. Looking at counsel's billing during the post-remand proceedings to district court, the Court makes the following observations and allowances:

- Beginning with an entry on April 27, 2017, counsel itemizes 20.3 hours of time incurred through an unsuccessful settlement conference on August 15, 2017. The Court finds these tasks to be related and necessary, but finds

---

[19] Not only was reconsideration sought for a ruling made eleven months previously, but Parent's Motion was filed about eight months past a deadline to notify the Court of any additional claims to be considered (Doc. 94, p. 4), and seven months past the deadline to seek leave to amend pleadings (Doc. 95, ¶ 3).

[20] For example, on January 9, 2014, counsel billed 1.4 hours to *prepare her bill*. This is inappropriate because keeping contemporaneous time records is not a separate legal service. This Court has never awarded fees based on the time it takes to prepare a bill.

some of the time spent reading and traveling to be overstated. The Court will allow 18 hours.

- Following the failed settlement conference, counsel prepared and filed a Motion for Sanctions (Docs. 175,176) against the District—alleging that its representative did not come to the settlement conference with proper legal authority to settle Parent's claim. The Court summarily rejected Parent's argument and believes, further, that the Motion was wholly unnecessary and not well taken. The Court will not award any fees related to this Motion.

- On October 5, 2017, Parent filed the instant Motion and Brief in Support for the fees and costs at issue here. (Docs. 185, 186). The District then filed its Response brief (Doc. 187), and Parent filed her Reply (Doc. 191). Since the Motion had yet to be adjudicated, Parent did not include a separate request for fees related to drafting the Motion itself. Although it is not this Court's *custom* to award fees for time spent documenting a request for fees, the situation here is out of the ordinary, in that the Court required briefing on the threshold dispute of whether Parent had prevailed at the administrative hearing at all, and if so, what an appropriate fee award would be. Despite the fact that Parent's counsel did not make a request for fees related to drafting the instant Motion, the Court believes that a reasonable fee should be awarded. Having carefully studied the briefing, and based on the Court's own experience, the Court will allow a total of 10 hours of time for this service.

- Any other billed tasks not mentioned above are deemed unrelated or unnecessary to the attorney fee issue.

The allowances for post-remand tasks total 28 hours. At $250.00 per hour, Parent is entitled to an award of attorney fees totaling $7,000.00 for her work in district court.

### 3. Circuit Court Proceedings

On appeal to the Eighth Circuit, Parent had sought to reverse the district court's dismissal of her: (i) IDEA claims, (ii) § 1983 claims against the ADE, and (iii) § 1983 claims against the District for its alleged constitutional and statutory civil rights violations. The appeal related to her IDEA claims had two components; one based on substantive violations, the other predicated on Parent's argument that her attorney fee claim was timely filed in the district court. Parent's success on appeal was limited to the court's ruling that

23

her attorney fee claim was indeed timely. Accordingly, Parent is entitled to receive compensation for her counsel's time spent preparing her argument as to the timeliness of her attorney fee claim in district court. However, she is not entitled to any fees based on her total time spent on the appeal. *Hensley*, 461 U.S. at 434-35.

Parent seeks an award of $22,995.00 in attorney fees incurred on appeal. In support, she attaches time records as Exhibit A-2. (Doc. 185-3). There she lists two entries in April 2016 totaling 4.8 hours related to researching and preparing the Notice of Appeal, and 2.3 hours on May 6, 2016 for preparing the notice of appendix. Then, in one single entry dated August 1, 2016, counsel claims a total of 58.6 hours for "Research[ing] and fil[ing] 8th Circuit Appeal Brief." Viewing the appeal briefing as a whole, a combined total of 65.7 hours for all appeal-related tasks does not seem completely unreasonable—understanding that only a fraction of those hours would be associated with Parent's argument concerning the limitations period for seeking attorney fees under the IDEA. But counsel clarifies in her Reply (Doc. 191) that her hourly itemization "[does] *not* include time spent on issues that the Parent did not prevail—*that time [has] already been excluded*." *Id.* at pp. 7-8 (emphasis in original). The Court has studied the appeal docket and briefing content and finds counsel's representation about these particular hours to be lacking in credibility. The argument section of Parent's brief pertaining to the limitations issue is *five* pages long. The District and the ADE filed opposing briefs on appeal—but there is no indication that Parent's counsel read them, and she certainly did not research or write a reply brief. So, to put a little finer point on this, counsel is seeking an award of $4,599.00 per page for her work on the limitations argument on appeal.

"The party seeking an award of fees must submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Counsel's testimony that her hours are supported by "contemporaneous time records of time spent . . . in this litigation," (Doc. 185-1 at ¶ 20), is nakedly belied by her bulk entry of 58.6 hours for a generically described task attributed to a single day. Counsel's documentation of her hours is wholly inadequate. Morever, the Court simply does not believe that the time claimed was spent on the limitations issue exclusively. Counsel's fee request must therefore be substantially reduced. The Court estimates that approximately one-fourth of Parent's appeal as a whole was concerned with the limitations issue.[21] A fee of $6,000.00 is reasonable for counsel's time incurred at the Circuit level.

### 4. Award of Costs

Parent seeks an award of costs incurred at the administrative level in the sum of $3,396.58, and costs incurred at the district and Circuit levels in the combined sum of $3,083.37. In making these claims, Parent's counsel affirms that she "reviewed the costs and removed entries for costs not recoverable or otherwise not reasonably expended." (Doc. 185-1, ¶¶ 9, 11). Unfortunately, counsel failed to identify and brief exactly which

---

[21] The IDEA fee issue was one part of one issue on appeal. The argument portion of Parent's opening brief is 25 pages in length (not including the preliminary summaries), five pages of which argued that Parent's fee request was timely filed. The District used 15 of its 35 argument pages to explain why IDEA fees were not timely filed. Parent *did not* file a reply brief. The Eighth Circuit disposed of the entire appeal in a five paragraph opinion—two of which addressed the timeliness of filing issue. This Court readily acknowledges that page length is a poor measuring stick for the relative importance or time devoted to any one issue. But it's the only relative measuring stick we have—in addition to the Court's own experience and familiarity the case—because counsel's time records are devoid of meaningful itemization of the 58.6 hours of time claimed.

25

categories of costs are properly recoverable to a prevailing party in an IDEA action.[22] The

IDEA provides that "in any action or proceeding brought under this section, the court, in its

discretion, may award reasonable attorneys' fees as part of the [taxable] costs . . ." 20

U.S.C. § 1415(i)(3)(B)(i). "Costs" refers to specific categories of expenses authorized by

statute, specifically by 28 U.S.C. §§ 1920 and 1821. *Arlington Cent. Sch. Dist. Bd. of

Educ. v. Murphy*, 548 U.S. 291, 298 (2006). Recoverable costs generally include fees of

the clerk, witness fees, transcripts, court appointed expert fees, and certain types of

copying expenses. 28 U.S.C. § 1920. This statute does not permit recovery of, *inter alia*,

mileage and lodging expenses. That said, when fees are sought in civil rights cases

pursuant to § 1988, non-statutory expenses—"the sort that lawyers ordinarily include in

their bills to clients"—may be awarded as part of the attorney fee. *Neufeld v. Searle Labs.*,

884 F.2d 335, 342 (8th Cir. 1989). The parties have not briefed the issue of whether the

IDEA fee statute at 20 U.S.C. § 1415(i)(3)(B) permits recovery of expenses not authorized

by § 1920, and the Court will not opine on such matters here.[23] Suffice it say that the

District has not objected on that basis.

---

[22] Parent does cite *Craik v. Minnesota State University Board*, 738 F.2d 348, 349-50 (8th Cir. 1984) in her Reply brief (Doc. 191, p. 7), but that case only stands for the proposition that an attorney's travel time *may* be included in a fee request if the district court finds it reasonable under the circumstances. *See also McDonald v. Armontrout*, 860 F.2d 1456, 1463 (8th Cir. 1988). *Craik* says nothing about the recovery of travel expenses as a statutory cost.

[23] *See McAllister v. Dist. of Columbia*, 794 F.3d 15, 18 (D.C. Cir. 2015) ("IDEA's fee-shifting provision must take account of the fact that unlike section 1988, which Congress passed as an exercise of its Fourteenth Amendment enforcement authority, Congress enacted IDEA pursuant to the Spending Clause.").

In total, Parent seeks to recover $6,479.95 in costs. The District says that many of these expenses were either unnecessary or should be reduced based on Parent's limited overall success. With regard to taxable costs under § 1920, will Court will allow $1,140.00 for fees paid to the clerk of court and for witness and service fees. The Court will also allow $1,324.37 for exemplification expenses—the full amount requested for imaging and copying of Parent's due process hearing disclosures and exhibits—because the Court cannot discern whether these materials were necessary to the Hearing Officer's rulings or not. And for similar reasons the Court will allow $1,902.30 for copies of the appendix and Parent's appeal brief.

With regard to costs not taxable under § 1920, Parent seeks to recover, among other things, $1,276.41 in mileage (including four separate trips for administrative hearings, one trip to attend an IEP conference, and one trip to attend the Magistrate Judge's settlement conference). The Court will reduce this expense by one-third, and only allow $850.94, because it finds that at least two trips for extra hearing days were the result of unnecessarily protracted litigation. Parent is also seeking $494.88 for lodging expenses related to her attendance at the due process hearings. The Court will reduce that amount by one-half, and only allow $247.44, because it believes the hearing was unnecessarily protracted. The remaining line item expenses are found to be unrelated or unnecessary. Therefore, in total, the Court will allow $5,465.05 to be recovered as costs.

## IV. CONCLUSION

For the reasons explained above, the Court hereby awards Parent attorney fees in and costs as follows:

- $19,710.00 for attorney fees incurred at the state administrative level;

- $11,662.50 for attorney fees incurred in district court;

- $6,000.00 for attorney fees incurred in Circuit Court; and

- $5,465.05 for combined costs incurred at all levels.

**IT IS THEREFORE ORDERED** that Parents Motion For Attorney's Fees and Costs (Doc. 185) is **GRANTED**, but in the reduced sum of **$37,372.50** in attorney fees and **$5,465.05** in costs.

**IT IS SO ORDERED** on this _16 th_ day of March, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE